IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT,
IN AND FOR JACKSON COUNTY,
FLORIDA

WILLIAM NELSON,

    Plaintiff,

CASE NO.: 24-CA-
FLA BAR NO.: 0739685

v.

TOWN OF SNEADS, and
ALTON RANEW, in his individual
capacity,

    Defendants.

_____/

## COMPLAINT

Plaintiff, WILLIAM NELSON, hereby sues Defendants, TOWN OF SNEADS, and ALTON RANEW, in his individual capacity, and alleges:

### NATURE OF THE ACTION

1. This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the First Amendment to the United States Constitution brought through 42 U.S.C. §1983 and under the common law of the State of Florida. Attorneys fees are sought under 42 U.S.C. §1988.

2. This is an action involving claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00).

3. The Plaintiff's claims for relief are predicated upon 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution and laws of the United States, and by 42

**EXHIBIT "A"**

U.S.C. §1988 which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

## PARTIES

4. At all times pertinent hereto, Plaintiff, WILLIAM NELSON, has been a resident of Jackson, County, FL. He is *sui juris*.

5. At all times pertinent hereto, Defendant, TOWN OF SNEADS, TOWN COUNCIL ("TOWN"), has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.

6. At all times pertinent hereto, Defendant, ALTON RANEW ("RANEW"), in his individual capacity, has been a resident of Jackson County, FL. He is *sui juris*.

## CONDITIONS PRECEDENT

7. Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were submitted to Defendant pursuant to 768.28(6), Florida Statutes.

## STATEMENT OF THE ULTIMATE FACTS

8. Plaintiff has lived in Defendant TOWN for sixty-five (65) years, has served in its police department for sixteen (16) years (non-consecutively), was its Chief of Police for approximately ten (10) years (non-consecutively), and was Town Council Member for approximately one (1) year (beginning in 1993). Plaintiff only left the Council at the request of Defendant TOWN to come back to its position of Police Chief. He has supervised several land development projects for Defendant TOWN, including specifically and without limitation football fields, softball fields, soccer fields, walking trails, and pavilions.

9. Plaintiff personally, and without compensation, wrote and applied for government grants on behalf of Defendant TOWN for which Defendant TOWN has received approximately Two Hundred Thousand dollars ($200,000.00).

10. Defendant TOWN has a Facebook page which is open to its members (mostly residents of Defendant) to post opinions on matters of public concern and relevant to Defendant. Another Facebook page which is entitled "Sneads, Town Talk," is a private Facebook page open to its members which is used as a public forum for citizens of Defendant TOWN to address town issues so the issues can be brought to Defendant TOWN council members. This Facebook page has as its members at least one (1) TOWN council member as well as various TOWN employees.

11. Plaintiff utilized both of these pages to voice his concern over the way Defendant TOWN was being operated. By way of example, on September 15, 2019, Plaintiff wrote on the Sneads, Town Talk Facebook page that none of the TOWN's council members (except for Mike Weeks) would stand up to the town manager Lynda Bell, who was committing various wrongdoings in her role as Town Manager.

12. By way of further example, on September 25, 2019, Plaintiff spoke out against Defendant TOWN's management in writing on Sneads, Town Talk Facebook page because of the complete flooring renovation in Town Hall. He wrote that there was $349,000.00 in the budget which could be used for the ballpark which was still in shambles. He asked if this was acceptable.

13. By way of further example, on or about February 19, 2020, Plaintiff spoke out against Defendant TOWN's management in writing on the Sneads, Town Talk Facebook page and stated specifically and without limitation that the conversations about the current town manager Lynda Bell should be made public, and that all voters should make sure to vote and get some good candidates in, and that she was too high and mighty to live in Sneads but was allowed to dictate

Snead citizens' lives, and that all council members should be fired with the exception of Mike Weeks.

14.     In or around March 2020, Defendant TOWN's Council Member Helen Grice passed away, leaving a vacant seat on the council.

15.     Plaintiff was outspoken on his Facebook page about matters of public concern, specifically and without limitation the integrity of Sneads Town Council members. On or about March 4, 2020, Plaintiff posted on his Facebook page that Town Council President Mike Weeks was a good man sitting among a council that was ineffective for the town. Plaintiff further stated that he is the only council member that has the best interest of the town at heart.

16.     On or about March 28, 2020, Plaintiff implied by his post on his Facebook page that Town Council Member Tim Arnold should not be re-elected. He asked what Arnold had contributed to the town and why the voters should consider him for two (2) more years.

17.     On or around April 14, 2020, an election was held for the seat occupied by Council Member Tim Arnold. Arnold was defeated in the election by George Alexander by a majority vote of 180 to 115. Grice's seat was still vacant.

18.     In April 2020, Plaintiff became aware that Council Member Defendant RANEW had used his position to allocate public funds to lay new water lines that would benefit several of his rental properties.

19.     Plaintiff opposed this misappropriation of funds in writing on the Sneads, Town Talk Facebook page, as well as on Defendant TOWN's public Facebook page, a forum in which all citizens have a chance to participate and voice their opinions. In Plaintiff's written opposition, he discussed matters of public concern to the citizens of Sneads, specifically the misappropriation

of funds. In doing so, he was explicitly and/or implicitly critical of TOWN's management of Sneads and RANEW's position as a Sneads Council Member.

20. On or around May 12, 2020, at a regularly scheduled council meeting, Council Member Alton RANEW made a motion to place the recently defeated former Council Member Arnold in Grice's vacant council seat.

21. Town Council President Mike Weeks opposed this motion. Defendant RANEW became angry and unprofessional. Councilman Tim Arnold verbally attacked Weeks and insisted that Weeks meet him outside. During this confrontation, Defendant RANEW walked up to Weeks, and told Weeks to tell Plaintiff that if he put RANEW's name on Facebook again that RANEW would come to Plaintiff's house and it was not going to be a pretty sight.

22. Thus, Defendant RANEW did threaten Plaintiff via a third party (Town Council President Mike Weeks). Town Council President Mike Weeks believed it to be a credible threat, and delivered the message to Plaintiff verbally via telephone on or around May 12, 2020.

23. Plaintiff and many citizens of Defendant TOWN opposed the actions taken by Arnold and Defendant RANEW, and voiced their opposition on Defendant TOWN's Facebook page.

24. Defendant TOWN subsequently needed a new Town Manager, and Plaintiff applied. He submitted detailed plans of his improvements for two (2) public areas, Dodson Family Park and Adam Tucker Wilson Recreation Field.

25. On or about May 17, 2020, Plaintiff posted on his Facebook page that he wanted to rebuild the Town's recreation program for the kids, and that one way to do it was to finish rebuilding the park. He stated that there should be plenty of money left in the budget. He stated he could build new dugouts instead of the posts and complete all the fence work on the fields and

5

utilizing areas in better ways. He stated that he would also love to see the Town provide uniforms for the kids. By stating all this, Plaintiff was implicitly or explicitly stating that he did not agree with the way the Town was being operated.

26. On or around May 20, 2020, at a special meeting, the Town Council met to review the screening of the thirty-one (31) applicants for Town Manager. The council had agreed to score applicants on a scoring system of one to hundred (1-100) based on the applicants' qualifications. The council agreed that it would interview the top five (5) applicants.

27. At least in part for retaliation for Plaintiff's exercise of free speech, Defendant RANEW scored Plaintiff a total of one (1). Despite Defendant RANEW's ridiculous score, Plaintiff scored high enough to be placed in the top (5) applicants.

28. After Plaintiff was rated number five (5) in the applicant pool, Defendant RANEW stated that the Council should only interview the top four (4) applicants. Council President Weeks opposed Defendant RANEW's statement to no avail. Plaintiff was never interviewed.

29. On the other hand, Defendant TOWN went out of its way to interview Butch Edwards, an applicant who was less qualified than Plaintiff. Defendant TOWN allowed Edwards to conduct an interview over the phone on or about August 2020, yet denied Plaintiff, a qualified and upstanding applicant, the opportunity to interview at all.

30. On or about August 11, 2020, Defendant TOWN hired another applicant, Lee Garner, as Town Manager. However, despite failing to hire or even interview Plaintiff, Defendant TOWN stole Plaintiff's land development proposals which he submitted with his application that would improve Dodson Family Park and Adam Tucker Wilson Recreation Field. Furthermore, Defendant TOWN wrote an ordinance that is verbatim to the ordinance that Plaintiff submitted which allowed golf carts to be used in Defendant TOWN.

31. Plaintiff submitted his land development proposals to Defendant TOWN in order to be considered and hired in the position of Town Manager. It was reasonable for Plaintiff to believe that if he was not hired as Town Manager, Defendant TOWN would not keep his land development proposals for its benefit without compensation to Plaintiff.

32. The use of Plaintiff's proposals by Defendant TOWN shows that Plaintiff was highly qualified and furthermore, that Defendant TOWN had an invidious motive in not hiring him.

33. Defendant TOWN's passage of an ordinance verbatim to Plaintiff's submitted ordinance further shows that Plaintiff was qualified for the position of Town Manager. Defendant TOWN has received numerous benefits from Plaintiff over the years yet has denied him compensation, respect, or opportunity for employment.

34. Furthermore, Defendant TOWN had a retaliatory motive for denying Plaintiff, as a qualified individual and citizen, an opportunity to interview for a position for which he was qualified.

35. Because Plaintiff was qualified for Town Manager and was denied an interview, the denial of an interview was based, at least in part, in retaliation for his exercise of free speech, which is protected by the First Amendment of the United States Constitution.

36. In continuing retaliation against Plaintiff for exercising his right to free speech, the Defendant once again passed over Plaintiff for the Town Manager position in February 2024.

37. More specifically, Plaintiff and one other individual submitted applications in response to Defendant's initial posting of the position. Despite Plaintiff's superior qualifications, which included grant writing and notable letters of recommendation, Defendant opted to reopen the position for a second round of advertising. Subsequently, during this second posting, Defendant

received applications from five individuals. Nonetheless, Plaintiff continued to be the most qualified candidate for the position.

38. Instead of selecting Plaintiff for the role, the Defendant chose Bill Rentz, who is less qualified, with Susan Durden as the secondary option, who is also less qualified.

39. Notably, Rentz was formerly employed as a probation officer or in a similar capacity and only sought grant writing training during the period in which he submitted his application. Furthermore, Rentz stated that he was contacted by several city managers regarding his application and/or support for his application to the position. Durden's prior experience was limited to operating a food truck and managing a catering business, with no other relevant professional background.

40. During Plaintiff's interview, Councilman George Alexander attended the session via cellphone. The sole question posed to Plaintiff by Alexander, which regarded his past employment, was asked by another council member on behalf of Alexander.

41. Plaintiff has retained the undersigned to represent his interests in this cause and are obligated to pay a fee for these services. Defendants should be made to pay said fees under the laws referenced herein.

## COUNT I
## FIRST AMENDMENT RETALIATION
### (Against Defendant TOWN)

42. Paragraphs 1 through 41 above are incorporated herein by reference.

43. This count sets forth a claim against Defendant TOWN for violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff engaged in constitutionally protected speech by making public statements, including without limitation statements alleging

that Defendant TOWN's agents were abusing their power. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above.

44. Defendant Town is a person under the laws applicable to this claim.

45. After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. Defendant TOWN infringed on Plaintiff's constitutionally protected interest in freedom of expression, in part, by denying Plaintiff an interview for the position of Town Manager and the position of Town Manager. The actions of Defendant TOWN were taken by its Council, the final policymaker regarding who did and didn't get to interview for the Town Manager position and who received the position.

46. The actions complained of herein were also taken by or at the direction of Council Member Defendant RANEW, Council Member Arnold, and others acting on behalf of Defendant TOWN, who are each delegated policymakers within the Defendant TOWN. Further, Defendant TOWN, through its agents and employees, had an absence of required policy, and/or engaged in a custom and practice of unconstitutionally retaliating against employees who speak out on matters of public concern.

47. Defendant TOWN's actions, through its employees and agents, of denying Plaintiff an interview for the position of Town Manager and the Town Manager position is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his First Amendment right to speak/express. The actions of Defendant TOWN were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment speech/expression rights. The actions and inactions of Defendant TOWN were taken under color of law with the intent to harm Plaintiff.

48. As a direct and proximate result of the actions taken against him by Defendant TOWN, Plaintiff suffered lost wages, benefits, emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other tangible and intangible damages. These losses have occurred in the past, are occurring at present and are certain to occur into the future.

## COUNT II
## FIRST AMENDMENT RETALIATION
### (Against Defendant RANEW)

49. Paragraphs 1 through 41 above are incorporated herein by reference.

50. This count sets forth a claim against Defendant RANEW for violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff engaged in constitutionally protected speech by making public statements, including without limitation statements alleging that Defendant RANEW was abusing his power and engaging in malfeasance and misfeasance when he held a position on the Defendant Town Council. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above.

51. After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. Defendant RANEW infringed on Plaintiff's constitutionally protected interest in freedom of expression, in part, by denying Plaintiff an interview for Town Manager despite his qualifications.

52. Defendant RANEW's actions, of denying Plaintiff an opportunity to interview for a paid government position and to receive that position, are examples of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his First Amendment right to speak/express. The actions of Defendant RANEW were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment speech/expression rights. The actions

and inactions of Defendant RANEW were taken under color of law with the intent to harm Plaintiff.

53. Defendant is a person under applicable law, and is liable to Plaintiff for the violation of legal and constitutional rights.

54. Based upon the facts presented to Defendant, no reasonable person, let alone a Town Council Member, could have concluded that there existed any legitimate basis to threaten Plaintiff and to take actions against him as described herein. The law was settled and clearly established that the actions of Defendant violated Plaintiff's right to Free Speech under the First Amendment to the United Stated Constitution at the time the actions were engaged in.

**55.** The actions or inactions of Defendant as set forth in part above constituted a deliberate indifference or reckless disregard for the violations of Plaintiff's First Amendment rights.

56. As a direct and proximate result of the actions taken against him by Defendant RANEW, Plaintiff suffered lost wages, benefits and other tangible damages. He has also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other intangible damages. These losses have occurred in the past, are occurring at present and are certain to occur into the future.

### COUNT III
### UNJUST ENRICHMENT
### (Against Defendant TOWN)

57. Paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

58. This count sets forth a claim by Plaintiff against Defendant TOWN in equity for unjust enrichment under the common law of Florida.

59. The benefits of Plaintiff's services were conferred on and flowed to Defendant TOWN, for which compensation was expected in the form of a paid position with Defendant

11

TOWN as Town Manager. Defendant TOWN had knowledge of the services performed by Plaintiff and, in fact, requested them.

60. Benefits in the form of Plaintiff's services as a land development planner for two public spaces conferred on and flowed to Defendant TOWN for which compensation in the form of a paid position and associated benefits was expected. Defendant was not authorized to use Plaintiff's plans otherwise.

61. The sums due Plaintiff have not been paid by Defendant TOWN, despite Defendant TOWN realizing the benefits of Plaintiff's services. Defendant TOWN did not hire Plaintiff as Town Manager, yet the Town Manager used all of Plaintiff's written proposals to develop and improve Dodson Family Park and Adam Tucker Wilson Recreation Field.

62. Defendant TOWN has been unjustly enriched at the expense of Plaintiff.

63. Under these circumstances, it would be inequitable for Defendant TOWN to retain the benefits of Plaintiff's services without paying the value thereof.

64. As a direct and proximate result of Defendant TOWN's conduct, Plaintiff has suffered damages including but not limited to all sums due him pursuant to his agreement with Defendant TOWN as well as any associated expenses incurred therewith as a result of Defendant TOWN's actions and inactions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e) enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demand a trial by jury on all issues set forth herein which are so triable. Dated this 29th day of March, 2024.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF