UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM NELSON,

    Plaintiff,

v.                                        CASE NO. 5:24-cv-00123-MW-MJF

TOWN OF SNEADS, *et. al.*,

    Defendants.
_____/

## MOTION TO DISMISS WITH PREJUDICE

Pursuant to *Federal Rule of Civil Procedure* 12(b)(6), Defendants Town of Sneads, Florida, ("the Town") and former Councilman Alton Ranew ("Ranew") individually, move to dismiss Plaintiff's Complaint, [ECF-1-1], with prejudice and state:

1. This is an action for First Amendment retaliation and unjust enrichment. Plaintiff, Willaim Nelson ("Nelson"), that Defendants failed to hire him for the position of Town Manager in retaliation for repeatedly criticizing the Town's leadership—including Ranew. Nelson asserts that the Town was unjustly enriched because it implemented ideas he had proposed as part of his application to become Town Manager without hiring him for the position.

2. Plaintiff's First Amendment Retaliation claims (Count I and II) fail as a matter of law. A public employee's First Amendment rights are "not absolute,"

and local governments may act in response to speech in certain circumstances. Here, under the *Pickering* balancing test, Nelson's claims fail because the Town's interest in the effective and efficient fulfillment of its responsibilities (*i.e.,* the Town Council's ability to work in efficiently and harmony with its Town Administrator) outweighs Nelson's First Amendment interests. Alternatively, under the *Elrod–Branti* exception, the Town was able to expect and demand political loyalty from its top employee charged with implementing its policies and directives—and could, therefore, lawfully refuse to hire Nelson for speech critical of such policies and decisions.

     3.    Plaintiff's unjust enrichment claim fails as a matter of law because it is well established that such claims are barred ty the Town's sovereign immunity from suit.

     **WHEREFORE**, Defendants the Town of Sneads, Florida, and Alton Ranew, individually, request that the Court dismiss this action with prejudice for failure to state a claim.

## MEMORANDUM OF LAW

     Pursuant to Local Rule 7.1(E), Defendant offer the following Memorandum in support of this Motion.

I. <u>Standard of Review</u>.

In considering a motion to dismiss, the Court must generally accept the factual allegations in the Complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019).

But the Court may also "take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment" when the proposed evidence consists of "public records that [are] 'not subject to reasonable dispute.'" *Horne*, at 802 (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.1999) and *Fed. R. Evid*. 201(b)). *See e.g. Ellison v. Postmaster Gen., United States Postal Serv*., 2022 WL 4726121, at *6 (11th Cir. Oct. 3, 2022) ("a district court, at the motion to dismiss stage, may take judicial notice of relevant public documents.").

Here, the Town requests that the Court take judicial notice of Article III, Division 2, of the Town's Charter, attached as Exhibit "A" ("Town Manager"). *See Baker v. JEA*, 22-11335, 2023 WL 5528717, at *1 (11th Cir. Aug. 28, 2023) ("We take judicial notice of the Charter and ordinances of the City of Jacksonville as they are not subject to reasonable dispute.").

II. **Plaintiff's factual allegations.**

Nelson's allegations are straightforward and, for the purposes of this motion, accepted as true.

In May 2020, Nelson, a lifelong resident of the Town, applied for the position of Town Manager. [Doc.1, ¶¶24, 26]. Nelson had previously worked for the Town in various positions, including as its Chief of Police and, briefly, as a member of the Town Council in the early 1990's. [Doc.1, ¶8].

The Town manager is the "Chief Executive Officer and head of the administrative branch of the Town government," and is charged with implementing the Town Council's policies and directives. [Exhibit "A" (explaining that the Town manager is "responsible to the Town Council for the proper administration of all affairs of the Town.")]. Among various expressly required duties—such as reporting to the Council on financial and administrative matters, submitting an annual budget to the Council, recommending capital improvements to the Council, hiring and firing Town employees, and entering contracts, bids, *etc.* "approved by the Town Council for the routine operation of the Town's business"—the Town Manager must also perform all such "other duties as may be . . . required of him/her by the Council." [Exhibit "A"].

Upon receiving Nelson's application, Defendant Ranew, a member of the Town Council, scored Nelson's application extremely low—just 1 out of 100. [Doc.1, ¶26]. Despite this "ridiculous score," the other Council members scored

4

Nelson high enough for him to ultimately be ranked 5th out of 31 applicants. [*Id*. at ¶27]. Still, because of Ranew's low score and opposition to his application, Nelson was not interviewed (much less hired) for the job. [*Id*. at ¶¶28, 30].

Nelson alleges that Ranew's opposition to his employment in the position—resulting in the failure of his application—was retaliation for various Facebook posts he had made that were critical of the Town Council's leadership, abilities, integrity, and commitment. These social media posts included:

| Date | Facebook Post |
|---|---|
| September 15, 2019 | Nelson complained that "none of the Town's council members (except Mike Weeks) would stand up to the town manager Lynda Bell, who was committing various wrongdoings as Town Manager." [*Id*. at ¶11]. |
| September 25, 2019 | Nelson criticized the Council's decision to spend public funds for a flooring renovation in Town Hall rather than renovating the ballpark, asking if this was "acceptable." [*Id*. at ¶12]. |
| February 19, 2020 | Nelson criticized the Council's handling of alleged issues with Town Manager Bell, and stated that "all of the council members should be fired with the exception of Mike Weeks." [*Id*. at ¶13]. |
| March 2020 | Nelson questioned "the integrity of Sneads Town Council members," and stated that "Mike Weeks was a good man sitting among a council that was ineffective for the town," and that Weeks was "the only council member that has the best interest of the town at heart." [*Id*. at ¶15]. |

5

| March 28, 2020 | Nelson <u>implied that Councilman Tim Arnold "should not be re-elected"</u> and <u>"asked what Arnold had contributed to the Town and why voters should consider him for two (2) more years."</u> [*Id.* at ¶16]. |
|---|---|
| April 2020 | <u>Nelson accused Councilman Ranew of abusing his public position by "misappropriating" public funds to benefit his personal rental properties</u> and was otherwise "<u>explicitly and/or implicitly critical of [the] Town [Council's] management of Sneads and Ranew[.]</u>" [*Id.* at ¶19]. |
| May 17, 2020 | Nelson criticized the Council's management of the Town's recreation program "implicitly or explicitly stating that he did not agree with the way the Town was being operated." [*Id.* at ¶25]. |

As part of this application package, Nelson submitted ideas and "plans" for how he would improve two Town parks. [*Id.* at ¶¶24, 30]. Although the Town did not hire him, it implemented ("stole") these ideas. [*Id.* at ¶30]. The Town also passed an Ordinance allowing golf carts to be used in the Town which was identical to one Nelson had earlier proposed. [*Id.*].[1]

Finally, Nelson was again "passed over…for the Town Manager position in February 2024," which Nelson asserts was "continuing retaliation" for his same earlier described protected speech. [Doc.1, ¶¶36-38].

---

[1] Nelson does not allege when, how, or why he submitted the draft ordinance, or when, how, or why the Town adopted it. The ordinance issue is also not asserted in Count III's claim for unjust enrichment.

6

III. <u>Plaintiff's First Amendment retaliation claims fail as a matter of law</u>.

The First Amendment prohibits government officials from subjecting individuals to retaliatory actions for engaging in protected *speech. Houston Community College System v. Wilson*, 595 U.S. 468, 474 (2022). But in the context of public employment, such rights are "not absolute." *Hubbard v. Clayton Cnty. Sch. Dist.*, 756 F.3d 1264, 1266 (11th Cir. 2014).

Two relevant considerations in such claims are the *Pickering* balancing test—and the *Elrod–Branti* political patronage exception, which each limit the First Amendment rights of public employees in certain circumstances. For the reasons described below, both doctrines bar Nelson's claims.

A. <u>Plaintiff's claims fail under the *Pickering* balancing test</u>.

A public entity "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *McKinley v. Kaplan*, 262 F.3d 1146, 1149 (11th Cir. 2001) (*quoting Pickering v. Board of Education*, 205, 391 U.S. 563, 568 (1968)). Courts are thus "required to balance the interests of the employees, as citizens, commenting upon matters of public concern, and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*.

The balancing test applies to failure-to-hire claims by potential government employees in the same manner as to claims of wrongful termination

7

by existing employees. *Shahar v. Bowers,* 114 F.3d 1097, 1103 (11th Cir. 1997) (*en banc*) (applying *Pickering* balancing to prospective employee's failure-to-hire claim against a public employer).[2]

*Pickering* balancing involves a four-part test. The employee must show that: (1) their speech was made as a citizen and implicated a matter of public concern; (2) their free speech interests outweigh the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) their speech played a substantial part in the adverse employment action. If the employee demonstrates all three, the burden shifts to the employer to (4) show that it would have made the same decision even in the absence of the employee's protected speech. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir. 2015); *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1051 (11th Cir. 2022).

Only the second element is at issue here as the Town neither challenges (in this Motion) that Nelson's speech was protected nor that it was the reason he was not hired. This second element—determining whether Nelson's First Amendment interests outweigh the Town's interest in efficient and effective governance—is a question of law "decided by the Court." *Moss*, 782 F.3d at 618;

---

[2]   *See also Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000) (same); Hubbard v. EPA, 949 F.2d 453, 460 (D.C. Cir. 1992) (same).

*Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1159 (11th Cir. 2015).

"Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Chesser* at 1124 (quoting *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir.1989)). As the Supreme Court noted:

> [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

*Connick v. Myers*, 461 U.S. 138, 151 (1983). In other words, the courts afford "substantial deference to public employers" to end/avoid employment relationships that might hinder efficient operations. *Snipes v. Volusia Cnty.*, 704 Fed. Appx. 848, 852 (11th Cir. 2017).

Importantly, "[t]he government's legitimate interest in avoiding disruption does not require proof of actual disruption….a reasonable possibility of adverse harm is all that is required." *Anderson v. Burke Cnty.*, Ga., 239 F.3d 1216, 1220–21 (11th Cir. 2001). *See also Ross v. Clayton County*, 173 F.3d 1305,

1311 (11th Cir. 1999) ("a requirement of a showing of actual disruption would be overly burdensome to the public employer."); *Connick v. Myers*, 461 U.S. 138, 152 (1983) ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.").

Here, Nelson's allegations make clear that he disliked and disdained the members of the Town Council. He repeatedly and publicly criticized and ridiculed the Council members and their policies/decisions. He openly questioned their "integrity." He argued they did not have "the Town's best interests in their hearts." He questioned what they had done for the Town and why voters should re-elect them. He called for them all to be "fired." And, worst of all, he accused Councilman Ranew of abusing his position and committing the *crime*[3] of misappropriating public funds for his personal benefit. [Pages 5-6, above].

Nelson did all of this just days and weeks before he applied to the Council to be their most important and trusted employee. The "Town Manager" is not only a position of unique trust and confidence, as they are charged with implementing the policies, plans, and directives of the Council, but the position

---

[3] "Embezzlement" is the fraudulent appropriation of property by a person to whom property has been entrusted by reason of some office, employment, or position of trust and has been incorporated into Florida's theft statute, § 812.014, *Florida Statutes*. *Houston v. City of Tampa Firefighters & Police Officers' Pension Fund Bd. of Trustees*, 297 So. 3d 664, 669 (Fla. 2d DCA 2020).

requires constant contact and communication between the Manager and Council. [Exhibit "A"].

It takes little imagination to understand how a contentious, hostile, and adversarial relationship between the Council and its top employee would hinder and disrupt efficient Town operations. The Town Manager was not just a high-ranking employee—but the employee the elected Council must rely upon to carry out its decisions and act on the Town's behalf in various settings and matters. The Council was entitled to a manager they could trust would not undermine their authority or leadership, and who would faithfully and enthusiastically implement not just the letter, but the spirit, of their plans, decisions, and directives. The Council was entitled to a manager who could interact with them in a professional and courteous manner, and in a way that would not merely avoid disharmony, dissension, and discord, but would promote efficient and effective operations for the benefit of the Town.

Nelson's public ridicule of the Council made all of this impossible. There could never be a smooth, trusting, or efficient relationship. The Council was not required to turn a blind eye to Nelson's hostile opinion of them—and of their decisions—when selecting their new CEO.

The decision in *Curinga v. City of Clairton*, 357 F.3d 305 (3d Cir. 2004), is on point. In that case, the City Council dismissed its City Manager after he

campaigned against several council members in a primary election—and sas critical of their actions and decisions during the campaign. The Manger alleged his dismissal violated his First Amendment right to speak freely on matters of public concern. As here, the City Manager "was responsible to the city council for the administration of all municipal affairs placed in the Manager's charge," and "[ran] the day-to-day business operations of the City." *Id*. at 307. Under these facts, the court easily held that Pickering balancing favored the City:

> Curinga cannot establish that his interest in speech outweighed the government's interest in efficiency. Curinga's campaign against the candidates who won the election impaired the reconstituted city council's interest in efficient operations. . . . Curinga occupied the most sensitive, high-level policy-making appointive position in the City of Clairton, one that required confidentiality and a close working relationship with city council members to effectively implement their policies. Under this set of facts, the strong government interest outweighs the employee's speech.

*Curinga* at 1313.

Other cases illustrate that *Pickering* favors the government when speech hinders harmony in required close working relationships. In *Morales v. Stierheim*, 848 F.2d 1145, 1149–50 (11th Cir. 1988), for example, Morales was a principal planner for the Metropolitan Dade County Office of Community and Economic Development ("OCED") whose duties required close contact, communication, and coordination with a local community advisory board and its chairman. After Morales publicly attacked the Chairman (calling him a

"saboteur," a "hypocrite," a "liar," and a "Machiavellian politician" who "used the community"), OCED reassigned Morales, and Morales sued, alleging the reassignment was retaliation for his protected speech.

Confirming that governmental employers enjoy "a wide degree of deference" when "an employee's speech has a detrimental impact on close working relationships or destroys harmony among coworkers," *Id*. at 1149, the Eleventh Circuit rejected Morales' claim, explaining:

> The most damaging effect of Morales' statements on the governmental interest was the destruction of the necessarily close working relationship between [the Chairman] and Morales. The chief contact between OCED and the [community] Board consisted of conferences between Morales and [the Chairman] to establish an agenda for [community] Board meetings. Morales' statements. . . were couched in terms certain to alienate the Board's chairman….Since Morales' duties…required that he maintain a regular and close working relationship with [the Chairman], the effect of his statements was to bring the community development process in [community] to a virtual halt….
>
> Morales' speech impeded OCED in fulfilling its responsibilities…and undermined Morales' effectiveness in his job. The necessarily close working relationship between Morales and [the Chairman] was destroyed.

*Morales*, 848 F.2d at 1150-51.

*See also Green v. Finkelstein*, 2021 WL 4749686, at *16 (S.D. Fla. Oct. 12, 2021), *aff'd*, 73 F.4th 1258 (11th Cir. 2023) (firing of assistant public defender who made numerous comments criticizing her boss and his mismanagement of the office during an election did not violate the First

13

Amendment because she speech (including calling her boss a "racist"), made an effective continuing working relationship impossible: "Green held a position of trust in the office, and she lost that trust when she so harshly criticized the office's management . . . the First Amendment does not require that an official nourish the viper in the nest."); *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621-22 (11th Cir. 2015) (affirming the district court's determination that "the City's interest in avoiding dissension and discord in the fire department … outweighed Plaintiff's" free speech interests).

Here, Nelson occupied the most sensitive, high-level position in the Town— one that required trust and a close working relationship with the Town Council members to effectively implement their policies. There is no doubt that Nelson's public attacks on the Council would likely have made an efficient and effective working relationship impossible. Under these circumstances, the Town's interest in efficient operations outweighed Nelson's First Amendment interests.

For these reasons, Nelson's claims in Counts I and II should be dismissed with prejudice.

B. <u>Plaintiff's claims fail under the *Elrod–Branti* exception.</u>

Under the *Elrod-Branti*[4] exception, governmental employers may discharge public employees for lack of political loyalty/compatibility[5] when such is "a reasonably appropriate requirement for the job in question." *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996).

Unlike *Pickering* balancing, "the Eleventh Circuit has interpreted Supreme Court precedent as <u>categorically</u> permitting the dismissal of [certain] employees on the basis of political affiliation or belief 'because the government has a compelling interest in infringing their First Amendment rights.'" *Lock v. City of W. Melbourne*, 2013 WL 6798933, at *11 (M.D. Fla. Dec. 23, 2013))[6] (*quoting Leslie v. Hancock County Bd. of Educ.*, 720 F.3d 1338, 1347 (11th Cir.2013)). *See e.g. Sparkman v. Brimner*, 4:21-CV-230-AW-MJF, 2022 WL 20086975, at *2 (N.D. Fla. July 7, 2022) ("The Eleventh Circuit has established a 'categorical

---

[4]   *Elrod v. Burns*, 427 U.S. 347 (1977), and *Branti v. Finkel*, 445 U.S. 507 (1980).

[5]   The concept of "political patronage" under *Elrod/Branti* is not limited to literal "political/party affiliation" but rather encompasses a broader concept of "commonality of political purpose and support," *Peterson v. Dean*, 777 F.3d 334, 348 (6th Cir. 2015), and may include, for example, speech by subordinates that undermines a political body's policies. *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1348 (11th Cir. 2013).

[6]   Vacated on other grounds at 2014 WL 12693740 (M.D. Fla. May 28, 2014) (concluding that the *Elrod/Branti* analysis was premature as the affirmative defense had not been properly asserted by the Defendant).

15

approach' applicable in some circumstances" including when the employee is acts as the "<u>alter ego</u>" of his employer."); *Jones v. Lamkin*, 781 Fed. Appx. 865, 869 (11th Cir. 2019) ("[W]e use a "categorical approach. . . [i]f the employee had the same duties and powers as the elected official, she was the elected official's 'alter ego,' and her termination based on her political affiliation did not violate the First Amendment.").

This "categorical approach" applies to high-ranking executive officers charged with implementing the policies of a legislative body—such as school superintendents and city managers—because they "must act for the policies adopted by the [body] to have any effect." *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1351 (11th Cir. 2013). As the *Leslie* court explained:

> As the superintendent of a local school district, Leslie served in a policymaking or confidential role under our categorical approach to the *Elrod/Branti* inquiry because she was the executive officer on whom the Board relied for the enforcement of its policies. . . <u>The superintendent is an alter ego of the Board, which must rely on her not only to enter transactions on behalf of the Board, but also to enforce its policies</u>.

*Id*. at 1351 (First Amendment did not bar the school board from terminating its superintendent for speech critical of government policy). *See also Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989) (employee who serves as "general agent" of another "empowered to enter into business transactions on their behalf" satisfies test for "alter ego.").

Because the Town Manager is considered an "alter-ego" of the Town Council for the purposes of the *Elrod/Branti* inquiry, *Leslie*, 720 F.3d at 1351, Nelson's First Amendment challenged is "categorically" barred as a matter of law and must be dismissed with prejudice. *Id*.

Even if the claim was not categorically barred, the claim would still be barred under the traditional inquiry of whether "the effectiveness of the employee's position required political loyalty." *Jones*, 781 Fed. Appx. at 869. Once again, *Curinga* is on point. Addressing the *Elrod/Branti* exception separate from *Pickering*, the court reasoned:

> The District Court held that political "affiliation" was a reasonable requirement for Curinga's position. We agree. The duties of the city manager required the management of all city departments, hiring and firing city employees, representing the city at meetings, and implementing policies promulgated by the city council. No non-elective position in the City of Clairton carried greater policy making responsibility. Because of Curinga's conduct, the . . . council members had good reason to doubt whether they could rely on him to follow and implement their policies, or whether he would instead "obstruct[ ] the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod,* 427 U.S. at 367, 96 S.Ct. 2673. For these reasons, Curinga's policy making responsibilities exempt him from *Elrod/Branti* protections generally afforded to patronage dismissals.

*Curinga v. City of Clairton*, 357 F.3d 305, 313 (3d Cir. 2004).

For these reasons, as well, Nelson's First Amendment claims fail as a matter of law and must be dismissed with prejudice.

IV. <u>**Plaintiff's unjust enrichment claim is barred by sovereign immunity**</u>.

Nelson asserts that the Town was unjustly enriched by adopting ideas he "submitted with his application" to improve the Town without hiring him for the position. [Doc.1, ¶¶24, 30, 57-64]. The claim is dead on arrival.

"Article X, section 13 of the Florida Constitution provides absolute sovereign immunity for the state and its agencies absent waiver by legislative enactment or constitutional amendment." *Ingraham ex rel. Ingraham v. Dade Cty. Sch. Bd.*, 450 So. 2d 847, 848 (Fla. 1984). "[S]overeign immunity is the rule, rather than the exception." *Pan–Am Tobacco Corp. v. Dep't of Corr.*, 471 So.2d 4, 5 (Fla.1984). Absent a waiver, Florida sovereign immunity bars suit against the state or one of its political subdivisions. *Id*.

Relevant here, Florida has not waived sovereign immunity for quasi/implied contract claims such as unjust enrichment. *Brandwein v. Bd. of Trustees of the Univ. of S. Florida*, 2024 WL 326614, at *2 (M.D. Fla. Jan. 29, 2024) ("The state of Florida continues to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment in its own courts."); *Heine v. Florida Atl. Univ. Bd. of Trustees*, 360 So. 3d 412, 420 (Fla. 4th DCA 2023) (same); *Calderone v. Scott,* 2015 WL 1800315, at *2 (M.D. Fla. 2015) (same); *Lee Mem'l Health Sys. v. Hilderbrand*, 304 So. 3d 58, 59 (Fla. 2d DCA 2020) (remanding unjust enrichment claim for dismissal as barred by sovereign immunity); *City of Fort Lauderdale v. Israel*, 178 So. 3d 444, 447 (Fla. 4th DCA

2015) (same); *Brevard Cnty. v. Morehead*, 181 So. 3d 1229, 1232 (Fla. 5th DCA 2015) (same).

Nelson's unjust enrichment claim is thus barred by sovereign immunity and must be dismissed with prejudice.[7]

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the above memorandum complies with Local Rule 7.1(F), as it consists of only 3,968 words.

Respectfully submitted this 18th day of June 2024.

*/s/ Scott J. Seagle*


Scott J. Seagle, (FBN: 57158)
Robert A. Karst, (FBN: 1011012)
sjseagle@coppinsmonroe.com
rkarst@coppinsmonroe.com
jclark@coppinsmonroe.com
kwillis@coppinsmonroe.com
COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420 ׀ Fax: 850-422-2730
ATTORNEYS FOR DEFENDANTS
TOWN OF SNEADS and ALTON RANEW

---

[7] The claim is also laughably absurd. The "land development proposals….submitted with [Nelson's] application" are attached as Exhibit "B," and consist of internet screen-shots and printouts. They support such ground-breaking ideas as: The Town should "repair our streets and save money while doing it," "[hold a] town clean up day…," and "complete the Adam Tucker Wilson youth park and bring it back better than before." [*Id*. at pp.5-16]. The proposals represent no intellectual property of Nelson's own device and are certainly not of a type where equity would remotely demand compensation. If the claim were not barred by sovereign immunity (it is), the Court should treat the matter as one for summary judgment and enter judgment for the Town.

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*s/ Scott J. Seagle*
Attorney