## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**WILLIAM NELSON,**           **CASE NO.: 5:24-cv-00123-MW-MJF**

     **Plaintiff,**

**v.**

**TOWN OF SNEADS, and**
**ALTON RANEW, in his individual**
**capacity,**

     **Defendants.**

_____/

## AMENDED COMPLAINT

Plaintiff, WILLIAM NELSON, hereby sues Defendants, TOWN OF SNEADS, and ALTON RANEW, in his individual capacity, and alleges:

## NATURE OF THE ACTION

1.  This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the First Amendment to the United States Constitution brought through 42 U.S.C. §1983 and under the common law of the State of Florida. Attorneys fees are sought under 42 U.S.C. §1988.

2.      This is an action involving claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00).  This case was removed to this Court by the Defendant.

3.      The Plaintiff's claims for relief are predicated upon 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution and laws of the United States, and by 42 U.S.C. §1988 which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

## PARTIES

4.      At all times pertinent hereto, Plaintiff, WILLIAM NELSON, has been a resident of Jackson, County, FL. He is *sui juris*.

5.      At all times pertinent hereto, Defendant, TOWN OF SNEADS, TOWN COUNCIL ("TOWN"), has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.

6.      At all times pertinent hereto, Defendant, ALTON RANEW ("RANEW"), in his individual capacity, has been a resident of Jackson County, FL. He is *sui juris*.

## CONDITIONS PRECEDENT

7.     Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were submitted to Defendant pursuant to 768.28(6), Florida Statutes.

## STATEMENT OF THE ULTIMATE FACTS

8.     Plaintiff has lived in Defendant TOWN for sixty-five (65) years, has served in its police department for sixteen (16) years (non-consecutively), was its Chief of Police for approximately ten (10) years (non-consecutively), and was Town Council Member for approximately one (1) year (beginning in 1993). Plaintiff only left the Council at the request of Defendant TOWN to come back to its position of Police Chief. He has supervised several land development projects for Defendant TOWN, including specifically and without limitation football fields, softball fields, soccer fields, walking trails, and pavilions.

9.     Plaintiff personally, and without compensation, wrote and applied for government grants on behalf of Defendant TOWN for which Defendant TOWN has received approximately Two Hundred Thousand dollars ($200,000.00).

10.     Defendant TOWN has a Facebook page which is open to its members (mostly residents of Defendant) to post opinions on matters of public concern and relevant to Defendant.   Another Facebook page which is entitled "Sneads, Town Talk," is a private Facebook page open to its members which is used as a public

forum for citizens of Defendant TOWN to address town issues so the issues can be brought to Defendant TOWN council members. This Facebook page has as its members at least one (1) TOWN council member as well as various TOWN employees.

11.    Plaintiff and multiple other citizens utilized both of these pages to voice concerns over the way Defendant TOWN was being operated while at the same time posting about other events within the Town of Sneads as set forth in part below.

12.    By way of example, on September 15, 2019, Plaintiff wrote on the Sneads, Town Talk Facebook page that none of the TOWN's council members (except for Mike Weeks) would stand up to the town manager Lynda Bell, who was committing various wrongdoing in her role as Town Manager.  Specifically, he said "I would like to say that nine [sic- should have said "none"] of the council will stand up against the manager is incorrect.  The one y'all give no credit to, Mike Weeks, is the only one that is willing to let her go but the rest, including Mrs. Grice, give her total control over Sneads."

13.    The background to that comment was that the Town hired Lynda Bell and problems began to develop under her supervision.  He knew that there was a Consent Order entered involving Bell during the time she was the Mayor of the City of Homestead in the 2010 time period which stemmed from an allegation that while a candidate for Mayor of the City of Homestead, she published a political

advertisement falsely stating that she was "endorsed by the Homestead Police Chief Al Rolle" when in fact she had not received such endorsement in writing.  She was also accused of misleading voters with imposter cops to keep her office in the 2014 time period, all of which occurred prior to Bell being hired by the Town of Sneads. It is with that backdrop, and his observations about questionable actions that Bell had taken while the town manager, that he made the comments about Bell based on his concerns about Bell not acting in the best interests of the Town of Sneads, especially in light of her background, of which the Town Council was aware.

14.    By way of further example of Plaintiff speaking on matters of public concern, on September 25, 2019, Plaintiff spoke out against Defendant TOWN's management in writing on Sneads, Town Talk Facebook page because of the complete flooring renovation in Town Hall.  He wrote "[c]omplete flooring renovation in Town Hall.  $349,000.00 in budget for ballpark.  Still in shambles. Acceptable?"   A month prior, on August 19, 2019, he posted on Facebook congratulating Terri Brown, was selected as the first female Chief of Police for Florida State University and called attention to the fact that she is the twin sister of the Town of Snead Clerk, Sherri Griffen.

15.    By way of further example of Plaintiff speaking out on matters of public concern, on or about February 19, 2020, Plaintiff spoke out against Defendant TOWN's management in writing on the Sneads, Town Talk Facebook page and

stated specifically and without limitation that the conversations about the current town manager Lynda Bell should be made public, and that all voters should make sure to vote and get some good candidates in, and that she was too high and mighty to live in Sneads but was allowed to dictate Snead citizens' lives, and "[g]et rid of the whole bunch but Mike."  That same day, Plaintiff posted on Facebook "Y'all BETTER get involved and get a couple of food [sic- should have said "good"] candidates to quality next week.  I'd [sic- should have said "if"] you don't you haven't seen anything yet. PLEASE PLEASE call a Town meeting and get it done. We can do so much better."

16.     In or around March 2020, Defendant TOWN's Council Member Helen Grice passed away, leaving a vacant seat on the council.

17.     Plaintiff continue to speak out on his Facebook page about matters of public concern, specifically and without limitation the integrity of Sneads Town Council members. On or about March 4, 2020, Plaintiff posted on his Facebook page that Town Council President Mike Weeks was a good man sitting among a council that was ineffective for the town. Plaintiff further stated "[c]ontrary to Mr. Daryl Johnson's [a Town Councilman] opinion that Mike [Weeks, a Town Councilman] is disgusting and should be ashamed and resign per our phone conversation today [sic] he is the only council member that has the best interest of this town at heart."  The following day, March 5, 2020, Plaintiff posted on Facebook the following: "God

bless all the law enforcement officers and other responders involved in the capture of this murder suspect" after posting about a crime..

18.    On or about March 28, 2020, Plaintiff posted on his Facebook the following about Town Council Member Tim Arnold:  "So I see reelect Tim Arnold signs no Johnson.  Can you tell us why the voters should consider you for two more years?  What have you contributed?"  Shortly before and after this post, he posted about praying for a woman who received a new job and for God's will for a complete healing for another person, Grammy, who was having hip surgery.

19.    These comments by Plaintiff about the Town's Council Members are only a few of the comments posted by Plaintiff on his own Facebook page and the Town Talk Facebook and, taken out of the context in which they were written, appear to be the only comments by Plaintiff, which is far from the truth.  Plaintiff has identified other comments above and below that he made around the same time as his protected public speech showing the context in which the protected comments were made.

20.    Specifically, there are at least a thousand pages of posts by Plaintiff and other citizens in the Town of Sneads that show, over time, that Plaintiff was extremely favorable towards the Town but that there were developing problems within the Town that Plaintiff spoke out about, as set forth herein.

21.     Additionally, for at least two to three years prior to the posts set forth above, Plaintiff posted about new proposals "to work on if elected."  On November 13, 2017, he stated just that and encouraged his US Congressman to get a VA Hospital in the Sneads area which would not only help "our local vets but would create some good paying jobs."  He posted that same day "[w]ell I love helping people, always have id [sic- should have said "if"] I could.  Sneads has a lot of potential, we just to have to unleash it.  With people like you, imagine what we can do." The day prior, November 12, 2017, Plaintiff posted on Facebook about getting a small emergency room in Sneads and said "[s]omething else for me to work on for Sneads when elected your commissioner."  He was running for Jackson County Commissioner at the time.

22.     On June 16, 2018, he posted his credentials as 27 years work experience in law enforcement, security and corrections, former Sneads Town Councilman, and grant writer and stated "I know the issues, I will put plans on the table to correct the issues.  I will put District 4 my priority and my hometown of Sneads.  There will be a solution to EMS service in Jackson County and Sneads will not lose our station. Please help me help you."  On August 1, 2018, he posted about a park that was built within Sneads that was widely used in the Sneads community for "our kids and grandkids" and the labor that went into building the park.

23.     On February 19, 2019, he posted on Facebook about small towns enacting golf cart ordinances and suggested that the Town could "reach out to a golf cart community and see how they govern this issue."  Five days before that posting, on February 12, 2019, he posted on Facebook that he worked hard for the Town of Sneads for over 25 years, not only at the police department but to build the ballpark. He said in that post that "[w]e are stagnant in our ability to be a thriving small Town in Jackson County.  Outsiders don't give a damn about Sneads [sic] its just a stepping stone."

24.     On April 6, 2020, he posted on Facebook about how proud he was to have served his hometown of Sneads as its Child of Police and favorably reminisced about his childhood in Sneads asking to start the work week off "praising God for healing our land.  Mercy will come a runnin!"  Eight days later, on April 14, 2020, he posted on Facebook the following:  "After all these years I still have a burning desire to do all I can for my hometown of Sneads Florida.  Even with all her problems she still stands strong since 1894."

25.     The same day, April 14, 2020, an election was held for the seat occupied by Council Member Tim Arnold. Arnold was defeated in the election by George Alexander by a majority vote of 180 to 115. Grice's seat was still vacant.

26.    In April 2020, Plaintiff became aware that Council Member Defendant RANEW had used his position to allocate public funds to lay new water lines that would benefit several of his rental properties.

27.    Plaintiff opposed this misappropriation of funds in writing on the Sneads, Town Talk Facebook page, as well as on Defendant TOWN's public Facebook page, a forum in which all citizens have a chance to participate and voice their opinions. In Plaintiff's written opposition, he discussed matters of public concern to the citizens of Sneads, specifically the misappropriation of funds. In doing so, he was explicitly and/or implicitly critical of TOWN's management of Sneads and RANEW's position as a Sneads Council Member.

28.    On or around May 12, 2020, at a regularly scheduled council meeting, Council Member Alton RANEW made a motion to place the recently defeated former Council Member Arnold in Grice's vacant council seat.

29.    Town Council President Mike Weeks opposed this motion. Defendant RANEW became angry and unprofessional. Councilman Tim Arnold verbally attacked Weeks and insisted that Weeks meet him outside. During this confrontation, Defendant RANEW walked up to Weeks, and told Weeks to tell Plaintiff that if he put RANEW's name on Facebook again that RANEW would come to Plaintiff's house and it was not going to be a pretty sight.

30.     Thus, Defendant RANEW did threaten Plaintiff via a third party (Town Council President Mike Weeks). Town Council President Mike Weeks believed it to be a credible threat, and delivered the message to Plaintiff verbally via telephone on or around May 12, 2020.

31.     Plaintiff and many citizens of Defendant TOWN opposed the actions taken by Arnold and Defendant RANEW, and voiced their opposition on Defendant TOWN's Facebook page.

32.     Defendant TOWN subsequently needed a new Town Manager, and Plaintiff applied as Lynda Bell was fired, in part for some of the things that Plaintiff complained about. He submitted detailed plans of his improvements for two (2) public areas, Dodson Family Park and Adam Tucker Wilson Recreation Field.

33.     On or about May 17, 2020, Plaintiff posted on his Facebook page that he wanted to rebuild the Town's recreation program for the kids, and that one way to do it was to finish rebuilding the park. He stated that there should be plenty of money left in the budget. He stated he could build new dugouts instead of the posts and complete all the fence work on the fields and utilizing areas in better ways. He stated that he would also love to see the Town provide uniforms for the kids. By stating all this, Plaintiff was implicitly or explicitly stating that he did not agree with the way the Town was being operated.  He also posted on May 20, 2020, other ideas for improving Sneads and getting input from the community.  He said "[t]hat's what

it takes to grow.  Very good suggestions.  The rc track sounds awesome and an Olympic size pool would be great.  Maybe the next FRDAP cycle we can go for it. The Town could build the rc track.  We would have to consider the cost increase of insurance for the pool but we fixing to save a lot of money.  Keep the input coming, great to see."

34.    That same day, May 20, 2020, at a special meeting, the Town Council met to review the screening of the thirty-one (31) applicants for Town Manager. The council had agreed to score applicants on a scoring system of one to hundred (1-100) based on the applicants' qualifications. The council agreed that it would interview the top five (5) applicants.

35.    At least in part for retaliation for Plaintiff's exercise of free speech and his criticisms on the siting Town Councilmembers, including RANEW, Defendant RANEW scored Plaintiff a total of one (1). Despite Defendant RANEW's ridiculous score, Plaintiff scored high enough to be placed in the top (5) applicants.

36.    After Plaintiff was rated number five (5) in the applicant pool, Defendant RANEW stated that the Council should only interview the top four (4) applicants. Council President Weeks opposed Defendant RANEW's statement to no avail. Plaintiff was never interviewed.

37.    On the other hand, Defendant TOWN went out of its way to interview Butch Edwards, an applicant who was less qualified than Plaintiff. Defendant

TOWN allowed Edwards to conduct an interview over the phone on or about August 2020, yet denied Plaintiff, a qualified and upstanding applicant, the opportunity to interview at all.

38.    On or about August 11, 2020, Defendant TOWN hired another applicant, Lee Garner, as Town Manager. However, despite failing to hire or even interview Plaintiff, Defendant TOWN stole Plaintiff's land development proposals which he submitted with his application that would improve Dodson Family Park and Adam Tucker Wilson Recreation Field. Furthermore, Defendant TOWN wrote an ordinance that is verbatim to the ordinance that Plaintiff submitted which allowed golf carts to be used in Defendant TOWN.

39.    Plaintiff submitted his land development proposals to Defendant TOWN in order to be considered and hired in the position of Town Manager. It was reasonable for Plaintiff to believe that if he was not hired as Town Manager, Defendant TOWN would not keep his land development proposals for its benefit without compensation to Plaintiff.

40.    The use of Plaintiff's proposals by Defendant TOWN shows that Plaintiff was highly qualified and furthermore, that Defendant TOWN had an invidious motive in not hiring him.  At no time did Plaintiff give the TOWN permission or consent to use his proposals for its own use.

41.    Defendant TOWN's passage of an ordinance verbatim to Plaintiff's submitted ordinance further shows that Plaintiff was qualified for the position of Town Manager. Defendant TOWN has received numerous benefits from Plaintiff over the years yet has denied him compensation, respect, or opportunity for employment.

42.    Furthermore, Defendant TOWN had a retaliatory motive for denying Plaintiff, as a qualified individual and citizen, an opportunity to interview for a position for which he was qualified.

43.    Because Plaintiff was qualified for Town Manager and was denied an interview, the denial of an interview was based, at least in part, in retaliation for his exercise of free speech, which is protected by the First Amendment of the United States Constitution.

44.    In continuing retaliation against Plaintiff for exercising his right to free speech, the Defendant once again passed over Plaintiff for the Town Manager position in February 2024.

45.    More specifically, Plaintiff and one other individual submitted applications in response to Defendant's initial posting of the position. Despite Plaintiff's superior qualifications, which included grant writing and notable letters of recommendation, Defendant opted to reopen the position for a second round of advertising. Subsequently, during this second posting, Defendant received

14

applications from five individuals. Nonetheless, Plaintiff continued to be the most qualified candidate for the position.

46.    Instead of selecting Plaintiff for the role, the Defendant chose Bill Rentz, who is less qualified, with Susan Durden as the secondary option, who is also less qualified.

47.    Notably, Rentz was formerly employed as a probation officer or in a similar capacity and only sought grant writing training during the period in which he submitted his application. Furthermore, Rentz stated that he was contacted by several city managers regarding his application and/or support for his application to the position. Durden's prior experience was limited to operating a food truck and managing a catering business, with no other relevant professional background.

48.    During Plaintiff's interview, Councilman George Alexander attended the session via cellphone. The sole question posed to Plaintiff by Alexander, which regarded his past employment, was asked by another council member on behalf of Alexander.

49.    Plaintiff has retained the undersigned to represent his interests in this cause and are obligated to pay a fee for these services.  Defendants should be made to pay said fees under the laws referenced herein.

## COUNT I
## <u>FIRST AMENDMENT RETALIATION</u>
### (Against Defendant TOWN)

50.    Paragraphs 1 through 49 above are incorporated herein by reference.

51.    This count sets forth a claim against Defendant TOWN for violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983.   Plaintiff engaged in constitutionally protected speech by making public statements, including without limitation statements alleging that Defendant TOWN's agents were abusing their power. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above.

52.    Defendant Town is a person under the laws applicable to this claim.

53.    After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. Defendant TOWN infringed on Plaintiff's constitutionally protected interest in freedom of expression, in part, by denying Plaintiff an interview for the position of Town Manager and the position of Town Manager. The actions of Defendant TOWN were taken by its Council, the final policymaker regarding who did and didn't get to interview for the Town Manager position and who received the position.

54.    The actions complained of herein were also taken by or at the direction of Council Member Defendant RANEW, Council Member Arnold, and others acting on behalf of Defendant TOWN, who are each delegated policymakers within the

Defendant TOWN.  Further, Defendant TOWN, through its agents and employees, had an absence of required policy, and/or engaged in a custom and practice of unconstitutionally retaliating against employees who speak out on matters of public concern.

55.    Defendant TOWN's actions, through its employees and agents, of denying Plaintiff an interview for the position of Town Manager and the Town Manager position is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his First Amendment right to speak/express. The actions of Defendant TOWN were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment speech/expression rights.  The actions and inactions of Defendant TOWN were taken under color of law with the intent to harm Plaintiff.

56.    As a direct and proximate result of the actions taken against him by Defendant TOWN, Plaintiff suffered lost wages, benefits, emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other tangible and intangible damages.  These losses have occurred in the past, are occurring at present and are certain to occur into the future.

**COUNT II**
**FIRST AMENDMENT RETALIATION**
**(Against Defendant RANEW)**

57.   Paragraphs 1 through 49 above are incorporated herein by reference.

58.   This count sets forth a claim against Defendant RANEW for violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983.  Plaintiff engaged in constitutionally protected speech by making public statements, including without limitation statements alleging that Defendant RANEW was abusing his power and engaging in malfeasance and misfeasance when he held a position on the Defendant Town Council. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above.

59.   After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. Defendant RANEW infringed on Plaintiff's constitutionally protected interest in freedom of expression, in part, by denying Plaintiff an interview for Town Manager despite his qualifications.

60.   Defendant RANEW's actions, of denying Plaintiff an opportunity to interview for a paid government position and to receive that position, are examples of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his First Amendment right to speak/express. The actions of Defendant RANEW were taken in violation of Plaintiff's clearly established rights under the

First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment speech/expression rights. The actions and inactions of Defendant RANEW were taken under color of law with the intent to harm Plaintiff.

61.    Defendant is a person under applicable law, and is liable to Plaintiff for the violation of legal and constitutional rights.

62.    Based upon the facts presented to Defendant, no reasonable person, let alone a Town Council Member, could have concluded that there existed any legitimate basis to threaten Plaintiff and to take actions against him as described herein. The law was settled and clearly established that the actions of Defendant violated Plaintiff's right to Free Speech under the First Amendment to the United Stated Constitution at the time the actions were engaged in.

**63.**    The actions or inactions of Defendant as set forth in part above constituted a deliberate indifference or reckless disregard for the violations of Plaintiff's First Amendment rights.

64.    As a direct and proximate result of the actions taken against him by Defendant RANEW, Plaintiff suffered lost wages, benefits and other tangible damages.  He has also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other intangible damages.  These losses have occurred in the past, are occurring at present and are certain to occur into the future.

## COUNT III
## <u>UNJUST ENRICHMENT</u>
### (Against Defendant TOWN)

65.     Paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

66.     This count sets forth a claim by Plaintiff against Defendant TOWN in equity for unjust enrichment under the common law of Florida.

67.     The benefits of Plaintiff's services were conferred on and flowed to Defendant TOWN, for which compensation was expected in the form of a paid position with Defendant TOWN as Town Manager. Defendant TOWN had knowledge of the services performed by Plaintiff and, in fact, requested them.

68.     Benefits in the form of Plaintiff's services as a land development planner for two public spaces conferred on and flowed to Defendant TOWN for which compensation in the form of a paid position and associated benefits was expected.  Defendant was not authorized to use Plaintiff's plans otherwise.

69.     The sums due Plaintiff have not been paid by Defendant TOWN, despite Defendant TOWN realizing the benefits of Plaintiff's services. Defendant TOWN did not hire Plaintiff as Town Manager, yet the Town Manager used all of Plaintiff's written proposals to develop and improve Dodson Family Park and Adam Tucker Wilson Recreation Field.

70.    Defendant TOWN has been unjustly enriched at the expense of Plaintiff.

71.    Under these circumstances, it would be inequitable for Defendant TOWN to retain the benefits of Plaintiff's services without paying the value thereof.

72.    As a direct and proximate result of Defendant TOWN's conduct, Plaintiff has suffered damages including but not limited to all sums due him pursuant to his agreement with Defendant TOWN as well as any associated expenses incurred therewith as a result of Defendant TOWN's actions and inactions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)    that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d)   enter judgment against Defendants and for Plaintiff

permanently enjoining Defendants from future violations of the state

and federal laws enumerated herein;

(e)   enter judgment against Defendants and for Plaintiff awarding

Plaintiff attorney's fees and costs; and

(f)   grant such other further relief as being just and proper under the

circumstances.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demand a trial by jury on all issues set forth herein which

are so triable.

Respectfully submitted,

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing has been served on all counsel of record by CM/ECF this 9th day of July, 2024.

/s/ Marie A. Mattox
Marie A. Mattox